UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHIRLEY CAROLINE McINTOSH, Individually and as Guardian and Representative of M.M., D.M., T.M., and J.M., minors,<br><br>      Plaintiffs,<br><br>  v.<br><br>CUB CRAFTERS, Inc.,<br><br>      Defendant. | No.  CV-13-3004-EFS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S FOURTH AFFIRMATIVE DEFENSE** |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Shirley McIntosh's Motion to Dismiss Defendant's Fourth Affirmative Defense, ECF No. 15, filed in her individual and representative capacity. Having reviewed the pleadings, the record in this matter, and applicable authority, the Court is fully informed. For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part.

## II. BACKGROUND

**A. Factual History[1]**

On April 23, 2011, Plaintiff Shirley McIntosh's husband, David McIntosh, was killed in the crash of a Cub Crafters Model CC11-160

---

[1] The factual history recited herein is based on the factual allegations in the Complaint, ECF No. 1. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court assumes to be true those portions of the Complaint that "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," but the Court does not afford the presumption of truth to allegations that "simply recite the elements of a cause of action." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

ORDER **-** 1

Carbon Cub (registered as N143FJ), a Light Sport Aircraft (LSA). The crash occurred at Everitt Airport in Parker, Colorado, during a sales demonstration flight, destroying the aircraft and killing Peter Vinton and David McIntosh. Peter Vinton, the pilot of the aircraft, was demonstrating the flight maneuvers and climb performance of the aircraft to Mr. McIntosh, a passenger in the aircraft.

**B.    Procedural History**

On January, 24, 2013, Plaintiff, on behalf of herself and four minor children, filed a Complaint alleging negligence and wrongful death against Cub Crafters, Inc. ECF No. 1. On February 20, 2013, Defendant filed their Answer, alleging multiple affirmative defenses including:

> **Fourth Affirmative Defense.** The product referred to in the Complaint, was designed, tested, assembled, manufactured, certified, approved, and sold in full compliance with the Federal Aviation Regulations (14 C.F.R. § § 1 et seq.), and in full compliance of American Society for Testing and Materials (ASTM) standards under the supervision of the Federal Aviation Administration, an agency of the United States Government, and, as such, the claims set forth in the Complaint are preempted by federal law.

ECF No. 5 at 2. On June 4, 2013, the Court held a Scheduling Conference, and directed the parties to file any dispositive motions related to the preemption defense by August 5, 2013. ECF No. 10. On August 5, 2013, Defendant filed a memorandum further clarifying the Fourth Affirmative Defense but sought no specified relief. ECF No. 14. On August 15, 2013, Plaintiffs filed a Response and Motion to Dismiss arguing that preemption does not apply and concluding that the

ORDER **-** 2

Fourth Affirmative Defense should be dismissed.[2]  ECF No. 15.  On September 5, 2013, Defendant filed a response to the motion to dismiss, ECF No. 16, and subsequently, the Court permitted Plaintiffs to file a reply, ECF No. 20, which was filed on September 24, 2013, ECF No. 21.

**III.  MOTION TO DISMISS DEFENDANT'S FOURTH AFFIRMATIVE DEFENSE**

Plaintiffs moves to dismiss Defendant's Fourth Affirmative Defense which asserts that the claims in the Complaint are preempted by federal law.  However, the parties' briefing is completely devoid of citation to the standard for the relief sought.  While Plaintiffs' motion is captioned as a "Motion to Dismiss" and concludes that "Defendant's Affirmative Defense No. 4 should be dismissed," the brief also argues that "federal preemption does not apply to this litigation, and Defendant's Affirmative Defense No. 4 (federal preemption) must be stricken" and that "[u]nder Ninth Circuit precedent, Defendant's defense would be stricken."  ECF No. 15.  Accordingly, the briefing is unclear if Plaintiffs seek relief pursuant to Federal Rules of Civil Procedure 12(b)(6) or 12(f).  However, having reviewed Plaintiffs' motion and the applicable authority, the Court finds the motion should be treated as a motion to strike.  *Compare Rutman Wine Co. v. E.&J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("The purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints . . . .") *with Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,

---

[2] Plaintiffs' motion was not filed as a motion nor noted for a hearing.  *See* Local Rule 7.1.  Accordingly, the filing was not docketed as a pending motion until September 6, 2013.

ORDER **-** 3

677 F.2d 1045, 1057 (5th Cir. 1982) ("Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law.") *and Old Dutch Farms, Inc. v. Milk Drivers & Dairy Emp. Local Union No. 584*, 281 F. Supp. 971, 976 (E.D.N.Y. 1968) ("[A]t one time the proper procedure for raising objection to the sufficiency of a defense troubled some courts, it seems that the 1946 amendment to Rule 12(f) was designed to provide a specific method of raising such a challenge.")

**A.   Legal Standards**

    1.   <u>Motion to Strike</u>

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Rule 8(c) of the Federal Rules of Civil Procedure determines whether the pleading of an affirmative defense is "sufficient." *See Wyshak v. City National Bank*, 607 F.2d 824, 827 (9th Cir. 1979). A defense may be found "insufficient" as a matter of pleading or as a matter of substance. With respect to substantive insufficiency, a motion to strike an affirmative defense is proper "when the defense is insufficient as a matter of law." *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982).

//

ORDER - 4

2.  <u>Federal Preemption</u>

Federal law may preempt state law in three ways. First, "Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision." *Arizona v. United States*, 132 S.Ct. 2492, 2500-01 (2012). Second, "States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Id.* at 2501. Finally, "state laws are preempted when they conflict with federal law." *Id.* Regardless of the type of preemption involved — express, field, or conflict — "[t]he purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (internal quotation marks omitted).

Recently, in *Gilstrap*, the Ninth Circuit reviewed the issues of field preemption under the Federal Aviation Act (Act). *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1004 (9th Cir. 2013). In *Gilstrap*, the Ninth Circuit recognized that "federal law generally establishes the applicable standards of care in the field of aviation *safety*." *Id.* at 1005 (citations omitted) (emphasis in original). The court then adopted the Third Circuit's division of the Act's field preemptive effect into two components, the "state standards of care, which may be field-preempted by pervasive regulations, and state remedies, which may survive even if the standard of care is so preempted." *Id.* at 1006. Accordingly, the Ninth Circuit has established a two-part framework for evaluating field preemption. First, the Court must "ask whether the particular area of aviation

ORDER **-** 5

commerce and safety implicated by the lawsuit is governed by pervasive federal regulations." *Id*. Then, if pervasive federal regulations exist, "any applicable state standards of care are preempted . . . however, the scope of field preemption extends only to the standard of care." *Id*. "Local law still govern[s] the other negligence elements (breach, causation, and damages), as well as the choice and availability of remedies." *Id*. (citations omitted).

In *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007), the Ninth Circuit held that any state-imposed duty to warn airline passengers about risks of deep vein thrombosis was preempted by the FAA and its corresponding regulations. I*d*. at 471 ("[T]he regulations enacted by the Federal Aviation Administration, read in conjunction with the [Act] itself, sufficiently demonstrate an intent to occupy exclusively the entire field of aviation safety and carry out Congress' intent to preempt all state law in this field."). The Ninth Circuit in *Montalvo* pointed to specific and comprehensive regulations governing the warnings and instructions given to airline passengers. *See id*. at 472–73; *see also Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1007 (9th Cir. 2013) (finding pervasive regulations as to when and where air carriers must provide assistance in moving through an airport, but not finding pervasive federal regulations about how airline agents should interact with passengers). By contrast, in *Martin*, the Ninth Circuit held that the Act did not preempt a state tort lawsuit involving aircraft stairs because, in contrast to the lengthy list of federal regulations on passenger warnings, "the only [federal] regulation on airstairs is that they

ORDER - 6

can't be designed in a way that might block the emergency exists." *Martin ex rel. Heckman v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 808, 812 (9th Cir. 2009).

**B.   Discussion**

Here, neither party has presented any claim of express or conflict preemption, accordingly, as to Defendant's Fourth Affirmative Defense, the Court looks to the Act's field preemptive effect utilizing *Gilstrap*'s two-part framework.

Defendant's Fourth Affirmative Defense asserts preemption as to "the claims set forth in the Complaint." ECF No. 22. However, Plaintiffs correctly argue that there must be pervasive regulation as to each theory of liability asserted. ECF No. 15 at 4. In response, Defendant clarified that the Fourth Affirmative Defense "is directed only to this specific claim, paragraph 4.5a of the Complaint." ECF No. 16 at 6. Plaintiffs' Complaint at paragraph 4.5a asserts that Defendant was negligent in "failing to properly design, test, and approve the stall/spin characteristics of the accident aircraft." ECF No. 1 at 5-6. Accordingly, to the extent Plaintiffs seek to strike the Fourth Affirmative Defense as applied to all claims except 4.5a, the motion is granted. However, as to the claim of negligence asserted in 4.5a, the Court must determine whether, and in what respect, pervasive regulations exist as to the design, test, and approval of stall/spin characteristics of the accident aircraft.

The aircraft at issue was a Cub Crafters Model CC11-160 Carbon Cub (registered as N143FJ), a Light Sport Aircraft (LSA). The Administrator of the Federal Aviation Administration has broad

authority to publish regulations to provide for aviation safety. 49 U.S.C. § 106. Under this authority, the FAA in 2004 published a Final Rule in the Federal Registrar with the purpose to "[i]ncrease safety in the light-sport aircraft community by closing the gaps in existing regulations" and to "[p]rovide for the manufacture of light-sport aircraft that are safe for their intended operations." *See* Certification of Aircraft and Airmen for the Operation of Light-Sport Aircraft, 69 FR 44772-01. This rule added Federal Aviation Regulation (FAR) 21.190. *See* 14 CFR § 21.190. FAR 21.190(c) provides:

> (c) Manufacturer's statement of compliance for light-sport category aircraft. The manufacturer's statement of compliance required in paragraph (b)(1)(iii) of this section must--
>
> (1) Identify the aircraft by make and model, serial number, class, date of manufacture, and consensus standard used;
>
> (2) State that the aircraft meets the provisions of the identified consensus standard;
>
> (3) State that the aircraft conforms to the manufacturer's design data, using the manufacturer's quality assurance system that meets the identified consensus standard;
>
> (4) State that the manufacturer will make available to any interested person the following documents that meet the identified consensus standard:
>
>> (i)   The aircraft's operating instructions.
>> (ii)  The aircraft's maintenance and inspection procedures.
>> (iii) The aircraft's flight training supplement.
>
> (5) State that the manufacturer will monitor and correct safety-of-flight issues through the issuance of safety directives and a continued airworthiness system that meets the identified consensus standard;
>
> (6) State that at the request of the FAA, the manufacturer will provide unrestricted access to its facilities; and

ORDER ‐ 8

```
         (7)  State  that  the  manufacturer,  in  accordance  with  a
              production  acceptance  test  procedure  that  meets  an
              applicable consensus standard has--

                  (i)     Ground and flight tested the aircraft;
                  (ii)    Found  the  aircraft  performance  acceptable;
                          and
                  (iii)   Determined  that  the  aircraft  is  in  a
                          condition for safe operation.
```
14 CFR § 21.190(c).

Plaintiffs contend that because FAR 21.190 refers to "consensus standards" that no federal standard is mandated for the purposes of preemption. ECF No. 21 at 2. However, this reliance upon the term "consensus" is misplaced. On November 5, 2004, the FAA issued Order 8130.2F to "explain the new regulations . . . regarding addition of the light-sport aircraft category and light-sport experimental aircraft." Foreword, FAA Order 8130.2F, Airworthiness Certification of Aircraft and Related Products, Issued November 5, 2004 (Cancelled April 16, 2011 by Order 8130.2G). Section 6 of FAA Order 8130.2F describes the certification requirements and procedures applicable to Light Sport Aircraft, specifically:

> d. Light-Sport Aircraft Construction.  The manufacturer of an aircraft for airworthiness certification in the light-sport category **must manufacture the aircraft to the design requirements and quality system of the applicable consensus standard that has been accepted by the FAA and published through a notice of availability in the Federal Register** . . . A list of accepted consensus standards can be found on the FAA Web site.

Section 6, 121(d), Order 8130.2F CH5 (revised 1/15/2010) (emphasis added). Pursuant to this Order, on October 15, 2009, the FAA published a Notice of Availability which revised the consensus standard acceptable for certification to "ASTM Designation F 2245-09, titled; Standard Specification for Design and Performance of a Light

ORDER **-** 9

Sport Airplane." 74 FR 52997. Relevant portions of ASTM F 2245-09 include "4.5.9 Spinning," "4.5.7 Wing Level Stall," and "4.5.8 Turning Flight and Accelerated Turning Stalls." ASTM Standard F 2245-09. These standards set forth requirements for the stall and spin performance of LSA aircraft, and as adopted by the FAA, must be met to receive airworthiness certification.

Here, the Court finds that these ASTM Standards, as adopted by the FAA and required for airworthiness certification, pervasively regulate the stall/spin characteristics of light sport aircraft. Accordingly, based upon field preemption, federal law exclusively establishes the standard of care as to the design, test, and approval of the stall/spin characteristics, preempting any state standards.

### IV.    CONCLUSION

For the foregoing reasons, the Court finds that Defendant's Fourth Affirmative Defense regarding preemption, as applied to only the claim of negligence at paragraph 4.5a of the Complaint, is sufficient as a matter of law.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' construed Motion to Strike, **ECF No. 15**, is **DENIED IN PART** (as to Complaint ¶ 4.5a) **and GRANTED IN PART** (as to remaining claims).

2. The Court finds that as to the design, test, and approval of the stall/spin characteristics of the accident aircraft, federal law exclusively establishes the standard of care preempting any state standards.

//

ORDER **-** 10

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 19th day of February 2014.

s/ Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge